```
           UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MARY K. MORRIS,               :   CIVIL NO. 3:04-CV-1439
                              :
         Plaintiff            :   (Judge Kosik)
                              :
     v.                       :   (Magistrate Judge Smyser)
                              :
JO ANNE B. BARNHART,          :
Commissioner of               :
Social Security,              :
                              :
         Defendant            :
```

## REPORT AND RECOMMENDATION

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

On November 14, 2002, the plaintiff, Mary K. Morris, applied for disability insurance benefits. She claimed that she became disabled on August 28, 2002, as the result of stroke, back pain, heart disorder, ischemia and depression.

The claim was denied initially and on reconsideration.  The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on January 15, 2004.

    At this hearing the plaintiff and a vocational expert testified.  TR. 249-297.

    On February 16, 2004, the ALJ issued her decision denying the plaintiff benefits.  TR. 9-14.  The Appeals Council denied the plaintiff's request for review (Tr. 3a), making the ALJ's decision the final decision of the Commissioner.

    The plaintiff filed her complaint with this court on July 6, 2004.  The defendant filed an answer to the complaint and a copy of the administrative record on September 16, 2004. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed her brief on November 16, 2004 and the defendant filed her brief on December 16, 2004.  No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

3

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's

impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that she has medically determinable impairments that are severe, that her impairments do not meet or equal any listed impairments, and that she is not unable to perform her past relevant work as a store laborer or commercial cleaner and threader.

5

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that substantial evidence to support the decision is not present because, she asserts, the ALJ erroneously rejected the psychological opinion of Dr. Klein and because the ALJ erroneously found the plaintiff not to be credible.

This case involves a determination by the ALJ that the plaintiff had not carried her burden to prove that she could not perform her past relevant work.  This is not a case involving an issue whether substantial evidence is presented to support a ruling that the Commissioner has carried her burden to establish that the plaintiff has the residual functional capacity to do work other than work that she performed in the past.

The plaintiff seeks to characterize Dr. Klein as a treating physician.  Dr. Klein examined the plaintiff just one time, and administered an MMPI test on that occasion.  Since

6

Dr. Klein saw her on one occasion and recorded things described by her about her emotions and her state of mind, the plaintiff's assertion that Dr. Klein's opinion is well supported by clinical and diagnostic techniques must be considered in the light of the fact that he observed and questioned her on just one occasion.  The ALJ considered Dr. Klein's report in that light, Tr. 12, and the ALJ's characterization of Dr. Klein here as a one time examiner is simply a plain statement of the nature and extent of Dr. Klein's familiarity with Ms. Morris' problems.  The ALJ gave appropriate weight to Dr. Klein's report(s).  Dr. Klein's input (TR. 231-234) here was not of such a nature that it should necessarily have been given greater weight than the February 2003 state agency psychological consultant's report, TR. 192-205.  Each psychological diagnostic source is arguably biased on the issue of psychological disability, one source arguably biased in favor of one's patient's interest in a disability claim and the other arguably biased in favor of institutional interests.  Dr. Klein's report is more detailed and is articulated in descriptive prose rather than in a mere check-off format, and Dr. Klein personally interviewed and

7

tested the claimant whereas the state consultant apparently did not.  But we are not in agreement with the plaintiff that it must be taken as self-evident that a mental impairment is amenable on the basis of one examination to evaluation as to its durational severity in relationship to residual functional capacity issues.  We do not think the plaintiff plainly or necessarily carried her burden with the report of one post-hearing mental examination, and therefore we do not think that the ALJ's determination to consider other evidence amounts to a determination not based upon substantial evidence.

The plaintiff asserts in her brief that the ALJ erred because the ALJ "felt [Dr. Klein] could not have accurately assessed the plaintiff's condition after only one visit ...."  This mischaracterization of the ALJ's "little weight" finding implies an ALJ finding that would obviously have been unsupported by substantial evidence.  But the ALJ made nothing like a "could not have accurately assessed" finding about Dr. Klein's examination and report.  There was no absolute and categorical rejection of that report.  Rather, the fact that

8

Dr. Klein had examined Ms. Morris only one time yet determined her to be severely limited in her ability to function in work-related activities and "unable to function gainfully" led the ALJ to accord little weight to that finding.[1]  The ALJ's determination, as we construe it, was that Dr. Klein's opinion was unexplainably far-reaching and absolute when based upon only one examination.

The plaintiff argues that the ALJ erred in finding the plaintiff not to be credible.

The ALJ wrote:

> As for the claimant's symptoms, the claimant testified and stated in the record that she has back pain, left sided numbness, difficulty sitting, standing or walking for more than 20 minutes at a time, requires 20 minute rest periods between activities, has fatigue, cannot walk more than 100 yards due to fatigue and is unable to lift more than 5 pounds due to back pain, has disturbed sleep, trouble remembering, thinking and concentrating and completing activities, requires reminders to plan each day, and being easily confused.  She also

---

1.  The ALJ did find a severe mental impairment.  TR. 11.

>alleges feelings of anxiety, anger outbursts, requiring a cane for ambulating, that her back pain radiates down her left arm and leg, and that she requires assistance with performing activities of daily living such as driving, cleaning, shopping, cleaning and laundry (Exhibit 1E).
>
>However, the undersigned finds that the claimant's allegations concerning her symptoms and limitations are not entirely credible and have therefore been given only limited weight in establishing her residual and functional capacity.
>
>While the claimant alleges extensive limitations, a December 2002 EMG report reveals no evidence for neuropathic involvement to explain her transient symptoms (Exhibit 4F). In addition, an EKG at this time showed a normal sinus rhythm with a heart rate of 80 beats per minute, a left ejection fraction of 54%, no evidence of ischemia, only a small mile fixed defect involving the anterior wall (Exhibit 6F). Subsequent notes show that while the claimant complained of chest pain, it was noted to be anxiety and the claimant was prescribed medication, which improved the claimant's feeling of chest tightness and palpitation (Exhibit 11F). The undersigned further notes that there is no indication that the claimant has required inpatient intervention for her symptoms, that a treating physician has concluded that she is disabled and unable to work, or that she receives ongoing therapy for her mental health difficulties.

TR. 11-12.

The plaintiff does not in any persuasive manner demonstrate that the ALJ credibility determination is erroneous.  The ALJ's credibility analysis was focused upon a claimant's self-perception of an inability to do substantial gainful activity because of anxieties, depression and other mental impairments.

The ALJ's quoted evaluation of subjective symptoms is sound.  The plaintiff asserts that "it is far more likely that Dr. Klein's assessment is correct."  Dr. Klein provides no greater reasons for an analysis that unreservedly accepts the truthfulness of reported subjective symptoms and finds in them a basis for a conclusion that the patient can not perform substantial gainful activity than the ALJ provides for her findings and conclusions.  "An analysis of the data reveals that Mary Morris' level of instability, at this time, precludes her functioning gainfully."  (TR. 233).[2]  We have some idea of

---

2.   Dr. Klein is a licensed psychologist. His letter to plaintiff's attorney states:

> Dear Mr. Hogg:
>
> In line with your request, an occupational assessment has been conducted related to the employability of Mary Morris.  Guidelines
> (continued...)

the vocational understandings or assumptions that Dr. Klein

---

2. (...continued)
for the conduct of a Clinical Psychological Examination including a person's ability to perform work related activities (mental) were used. Interviews were conducted, including testing with a Minnesota Multiphasic Personality Inventory-2 (MMP1-2). An analysis of the data reveals that Mary Morris' level of instability, at this time, precludes her functioning gainfully.

A childhood history in which she experienced serious child abuse from foster parents who brutalized her, led to early withdrawing from public school, six failed marriages and problems sustaining employment. The random recollection of early traumatic events continued to play out creating a blur between present realities and past happenings; the client shows signs of Posttraumatic Stress Disorder (DSM 309.01). Among her symptoms can be found: irritability, outburst of anger, difficulty concentrating, hyper vigilance, and an exaggerated startle response.

She lacks the ability to trust, she sees no future, and she reads into things more than apply to the situation. Normal job related pressures create extreme or marked over reactions making appropriate responses to supervisors, co-workers, and the public nearly impossible to sustain. Her ability to focus and concentrate on a problem is extremely limited and her history demonstrates lack of mature judgments. When asked what she would do if she was the first one, in a crowded theater to see smoke and fire, she responded, "Yell and go to an exit."

There exist major clinical factors contributing to the client's situation. Evidence of severe depression exists. This is reflected with her constant worrying, fatigue, tension, complaining, and withdrawal. Simple decision-making is difficult. She tends to be moody, stubborn, and opinionated. The client has strange ideas and perceptions, reality is distorted, and feeling of being persecuted prevails. This makes it very difficult to interact with her in meaningful and productive ways.

There is a strong indication for the need for medication for depression, anxiety and psychotic disorders. She uses denial as a defense, lacks insights, and would present problems working with most therapists. However, without medication and therapy her unproductive behaviors will continue. Supportive therapy without attempts at deep insights could be helpful, but this would take time because of her paranoid tendencies.

These impairments severely limit the client's ability to function in work-related activities.

TR. 233-234.

employed from his references to vocational situations, but there is far from a full picture of the methodology, the findings and the applications of the findings.  In this context where the plaintiff had the burden to show her inability to perform her past relevant work, even if the plaintiff's assertion that Dr. Klein is correct "that she has more than a moderate impairment in work functioning which supports her testimony of a severe temper impairment," that does not mean that the ALJ erroneously evaluated her credibility or that the ALJ did not base her decision on substantial evidence.

It is recommended that the appeal of the plaintiff be denied and that the case be closed.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

DATED: January 24, 2005.